Case number 10-0111, Sue Terbett-Dix v. Kitchen, Bath, Industry Show and Conference at all. All right. On behalf of the plaintiff? Good morning, Your Honor. Paul O'Rourke on behalf of the appellant. You'll need to speak up, though, okay? Okay. Your Honor, Judge Davis's decision to grant summary judgment in this case essentially boiled down to his determination that the plaintiff failed to adequately describe both the location and cause of her fall in McCormick Place. Clearly, based on the record, there's a clear issue of fact as to, you know. Well, what was the cause of the fall? Well, basically, the plaintiff was employed as a security guard in McCormick Place. We know the facts. What was the cause of the fall? The cause of the fall was she slipped and fell on popcorn, styrofoam packing material, while she was walking in a concrete aisle on the way back to the booth she was working in. All right. So that's the cause of the fall was the falling or stepping on the styrofoam. Correct, Your Honor. And you have two defendants remaining, United and? Freeman. Freeman. Correct. And Freeman has asserted that they had absolutely nothing to do with styrofoam. So how do you keep them in the case? Well, there's ample evidence in the case that Freeman was a general contractor. Freeman was the overall service contractor for the entire kitchen and bath show. Do we look at what responsibilities the general contractor had vis-a-vis the subcontractors to determine whether they had any control and authority over the remaining or the other defendant? Yes, Your Honor. That's one aspect of it. Additionally, with respect to your argument or your comment that they allege they never used styrofoam, within the deposition we took of the Freeman employee, he did state that Freeman was contracted with to provide to dismantle exhibits and package them up. There's a clear issue of fact. Well, but then we look at location, don't we? And location was fairly well identified as P16 or thereabouts. Correct, Your Honor. And the question is, do you have any evidence to connect Freeman to exhibitors in that general area where styrofoam was used in the course of dismantling or the exhibits? Well, there is testimony that Freeman provided those services, the dismantling and packaging services, within the South Hall, which is the exact area in which the plaintiff fell. Well, when you say exact hall, what kind of dimensions are we talking about? Well, I mean, granted that the McCormick Place is a fairly vast area. Is the South Hall also characterized that way? Yes, I would characterize it that way. But Freeman did, there was an additional. Was Freeman there to be called upon to respond, or are you saying they had complete charge of every inch of the. . . Well, I'm not saying that they had complete charge of every inch, but Freeman. . . Were they set up as like a go-to place where you could ask them to respond? Essentially, yes. Freeman maintained a service desk at the McCormick Place. From that, you're saying they were responsible for the styrofoam? Well, I'm saying they were responsible for the safety at McCormick Place. They held safety meetings in which they included all the other traits of the kitchen and bath show. Additionally, the testimony that we got was from the Risk Management Services Director of Freeman, and he said that he was on site at all times. He would conduct walk-throughs of the site and would make sure that there was. . . But as far as Freeman goes, do you have to show that they knew or had reason to know that there was styrofoam there at 445 in the morning? Do you have to show that at all? Well, Your Honor, I don't know if we have to show that they did have knowledge. . . Knew or had reason to know. You don't have to show this. Well, we do have to show that, but essentially. . . Let's just talk about Freeman. How did you show that they knew or should have known that there was this styrofoam packing there at 445 that morning at P16? Well, there was a contract between Freeman and United Maintenance. United Maintenance was the company that was responsible for maintaining all of the show floor aisles, specifically the general vacuuming of the aisles, and Freeman retained sufficient control over United Maintenance such that they should have had reason to know that this dangerous condition existed on the show floor. What are the facts that point to that? I mean, what was the testimony that at 4 o'clock or 3 o'clock or 2 o'clock that this styrofoam packing was on the floor and around P16? What evidence is there as far as that goes? Evidence that it was there? Yes, or that, yeah, that someone should have known. How do you establish that? Well, the evidence, we have the testimony and the incident report from the fire safety officer who responded to Ms. Tribbett-Dix, and after he responded to her, he went to the location that she pointed to and discovered this. He saw that there was some styrofoam, but that doesn't answer how you show that they knew at 445. They didn't go there like he did, so they didn't know that, and there's no testimony about what happened the several hours before. Hadn't the show ended that day and she was working the midnight shift and this was the cleanup, this was to begin the cleanup period? Correct, it was during the dismantling process. Is your position that Freeman really didn't have to have direct knowledge to the extent that United had knowledge, you can connect that knowledge to Freeman by virtue of there being a general contractor? Correct, correct. Okay, so how did United know about the styrofoam at 445 in the morning? Well, there's testimony that the plaintiff gave testimony that typically when she worked the midnight shift, cleaning crews would come in anywhere between 4 and 6 in the morning. That's a clear issue of fact that United Maintenance would have had knowledge that this condition existed at that time that the plaintiff felt. Let me ask you this regarding the service desk that Freeman maintained. Don't you have to have evidence that someone came to Freeman and regarding the need for cleanup near column P16 and then Freeman in the course of exercising its general contract duties informed United and maybe United didn't go or maybe Freeman was informed but didn't tell United to go clean up? Don't you have to have some connection between Freeman to demonstrate Freeman's failure to show that Freeman negligently exercised its authority over United? Well, I don't think we need that specific evidence, Judge, because the way the service desk worked was United was responsible for the show floor aisles and all of the aisles. Individual exhibitors could go to the Freeman desk to request additional cleaning services for their booths. So to the extent that Freeman had any duty, it was a duty that had to be triggered by someone's request and not an absolute duty to go about and make sure that everything was clean if no one sought their input. Well, Freeman's duty is in place in the respect that United had a contract with Freeman to provide the services for all of the show floor aisles. Now, we're not saying that Ms. Tribbett-Dix fell in one of the specific booths. If that was the case, then, yes, somebody would have had to go to Freeman. But in this case, she fell in a concrete aisle. So with respect to the circuit court's ruling that Ms. Tribbett-Dix didn't adequately articulate when and where she fell, obviously based on her testimony, the testimony of the security guard, and the incident report that he completed, she clearly articulated that location such that she created a duty on behalf of both defendants. And just so it's clear, Judge Davis ruled very narrowly and ruled that as a matter of law she didn't adequately identify the location of the fall, nor did she identify what caused her to fall. And really, it was only that ruling by Judge Davis that triggered the, or that supported his motion to dismiss. Correct. It's based on that narrow ruling. Obviously, if you rule that, then we wouldn't be able to establish. And all this was triggered by a single motion, and then everyone else joined in. Were there independent motions filed by defendants? No, there was one motion filed by Defendant Meredith, who is now out of the case. The other defendants joined in. And that one motion only addressed location and cause of the fall? That's correct, Your Honor. And that's what Judge Davis ruled on? Correct. All right. All right, well, you'll have a few minutes to respond. Thank you. There are two appellees. Have you divided your time? Yes. Okay, good enough. That's what I figured. May it please the Court, my name is Elise Allen. I'm counsel for United Maintenance, the claiming contractor. Briefly, Your Honors, to correct something stated by plaintiff's counsel in this matter, Judge Davis did not rule specifically as to the location issue. Well, let me ask you this. What did he have before him to rule upon? Your Honors, he had plaintiff's, well, sorry, plaintiff's motion, Meredith's motion, the response by plaintiff, and all of the related. What did Meredith's motion allege? Meredith's motion dealt specifically with location. However. Do you think that the Judge Davis could go beyond the motion and rule on matters that aren't properly before him? Your Honor, we contend, United Maintenance contends, that the secondary argument with regard to notice was argued properly by United Maintenance. Was it raised in a written motion? It was raised in its reply, Your Honor. Can you raise an issue in reply? Your Honor. Do you waive an issue raised in a reply that isn't raised in your first response in the initial motion? Your Honor, it's my contention that since those issues were argued and Judge Davis himself did not specifically state what his ruling was upon. Did Judge Davis prepare the order or did Meredith prepare the order that granted the motion? Meredith prepared the order. Did the motion that the order prepared by Meredith, joined in by all the other defendants, did that order list a basis for granting the motion as one on lack of notice? Your Honor, it didn't state either way which issue Judge Davis ruled upon. Judge Davis merely said, summary judgment is granted as to all defendants. And if we have uncertainty, or if the record is uncertain, as to whether or not the summary judgment motion was granted based on notice, do we simply assume that it was or do we remand? Certainly not, Your Honor. In situations of de novo review, you may rule upon summary judgment upon any basis, basically, that is, well, not even, that you decide is appropriate. In this situation, we argue first that plaintiff can't establish the location and has not given enough sufficient evidence to establish location. Secondly, we argue that there is no notice constructive or actual. Your Honors, I'm sure are aware of the deposition transcript of plaintiff who says herself, I'm not sure, I'm guessing, I said it could have been a P. And when someone says, I'm guessing, does that, is that like a literal, should we give that a literal meaning or can we take that as a colloquialism that says, that's simply a manner of speech that a person can guess and sometimes can guess accurately and we don't look at the language, we look at what the evidence supports. And here when we look at the entire record, her testimony as well as the responder to her cries for help, who in fact went from helping her to the location where he believed the accident occurred and inspected that area and saw what he believed were debris on the ground, can we just look at all that evidence and not get blinded by the use of the word guess? Certainly, Your Honor, all of the evidence is before the court and of course the court should look at all of the evidence. However, in this situation, plaintiff said, I'm just guessing. Secondly, when Mr. Weier, the fire... What was the question put to her just before she said, I'm guessing, and did you say she said speculating? No, she said guessing. Let me read you the whole section. Question, do you recall the number of the booth close to the point where your accident occurred? Answer, the pole was P something, that's all I can tell you. Question, the pole near the point of your accident had the letter P on it? Answer, I vaguely remember a P on the pole. Question, was that the only marking on it or were there more markings? Answer, I can't recall. There might have been some numbers, I cannot recall. Question, but you're sure there was a P on it? I'm not sure, I'm guessing, I said it could have been a P. This is the situation, not akin to Jewell v. Kimbrough, but however, in Jewell v. Kimbrough, you cannot base your theory of the case on surmised conjecture, yes. But you read that whole kind of poloquy, and if you go back to the beginning before she was being pushed about every particular, was there a number, was there a letter, she provided that testimony that it was P16. So do you look at the last answer or do you look, as Justice Garcia said, at everything that was just said? Your Honor, you look at everything. Presumably if there is a P. What if she had ended her deposition testimony after saying, I'm not sure, and she hadn't said, I'm not sure, I'm just guessing. If she hadn't said, I'm just guessing. If she simply said, I'm not sure, would you still be here arguing the same? I would certainly be here. Additionally, the fire safety. But you wouldn't be quoting on the guessing part. Oh, of course not, Your Honor. I would be guessing, I would just be saying, I'm not sure. And would I'm not sure be enough to support a motion for summary judgment on the issue of whether or not, as a matter of law, the location has not been sufficiently established? Were there nothing else in the record? Yes, Your Honor. Mr. Wire, the fire safety officer, responded to the emergency call about 540 in the morning. What we know from Mr. Wire's deposition is that he didn't know where plaintiff fell, but based on where he found her response to the injury call, we do know the plaintiff crawled. It's unknown how far, how long, et cetera. But he certainly had an idea of where to go. I mean, he didn't just pick out a spot randomly. You mean based on going back to the area of her fall? Is that what you're referring to? Yes. He deduced the spot where he believed it might have fallen, or she might have fallen, based on what she related to him. Yes, Your Honor. And basically, it is United's contention that everything is based upon this guess of plaintiff's. Additionally, United believes that the incident report is improper hearsay, and that even if this court were to consider the incident report, it's not a quoted narrative of what plaintiffs said, and therefore cannot be drawn as substantive evidence. Did she testify that after she fell, she started crawling on the floor? Yes. She said she fell. She was in serious pain. There was no one around. And so after a while, she started crawling. And was it her cries for help that brought Weir? Your Honor, I believe that someone else found her, and then there was a call made to Mr. Weir. As to our second argument with regard to the plaintiff provides no evidence that United had actual or constructive notice of the alleged dangerous condition, there is no evidence that United knew or had. What about the testimony the counsel referred to that she somewhat testified that between 4 and 6, United did their run-through, walk-through? Your Honor, please. Can you infer from that? No, Your Honor. Actually, what plaintiff testified to is she thought that at times some cleaning contractors came through. No one is identified as United, and there's no deposition testimony that says United was there. A cleaning contractor was there that morning. In fact, the accident occurred, as this court knows, during the dismantling process. After the show had ended. And the contractors at the show, the different booths, were in the process of take-down, break-down, whatever. United could clean after the dismantling process was complete, as testified by Freeman's risk management person, Drew Massa. The excess debris was to be removed only after all the exhibitors vacated the convention hall, again testified by Mr. Massa. There's no evidence tending to show that United was supposed to work during these hours. There's no evidence tending to show that United worked through the middle of the night, or that United was supposed to be working during the dismantling process itself. Really, Your Honors, there's nothing there before the court showing that there is some notice, especially because though plaintiff says that sometimes cleaning contractors came in early in the morning, she cannot say that this is something that always happens. She cannot even say that, for some reason, that this would happen during the dismantling process. You joined in a motion for summary judgment, right? Yes, Your Honor. All right. And that was what Justice Garcia was asking you, that in your reply you asserted this notice. Yes, Your Honor. Much like the case of Richardson v. Bond Drug Company, and unlike the cited cases of Busek, Bellerive, and Housh cited by plaintiff, this summary judgment should be affirmed because plaintiff fails to provide evidence of the material element of the claim and additionally any evidence whatsoever of notice. In the three cases cited by plaintiff, those cases had specifically identified a location of the accident. The location was not an issue in these cases. A specific loading dock in Busek, a specific stairway in Bellerive, a specific second story deck in Housh. In those cases, it involved disputes of the cause of the accident. Secondly, the instant case can't be likened to Busek because although that case did involve the McCormick place and the cleaning contractor, the cleaning contractor's agreement required it to clean the loading dock. And the same is the contract, Your Honors, although plaintiff states that it is of the record. Really, Your Honors, there are certain pages of the contract. There is no signature page. The full contract is not before this court. Additionally, Mr. Massa testified that the full floor would not be cleaned until the dismantling process ended. There were witnesses to the accident in Busek. We all know that there are no witnesses here. And there is no mention of the time of day in Busek in which the accident happened. But one can reasonably infer, because the loading dock was used and to the testimony in this case, that it was during the daytime hours. This did not happen during the daytime hours. It occurred early in the morning at a time where there was no evidence that United was there and certainly no evidence that they had actual or constructive notice. Do you agree, though, that United was the overall cleaning contractor for the show floor? Oh, yes, Your Honor. Though the contract is not before this court, there is no contention that United is going to voice the cleaning responsibilities. What is stated that United cleans the aisles, there is no dispute there. The dispute here is that- Didn't Massa say United provided all cleaning services before, during, and after the kitchen and bathroom? Yes. He also stated that he thought it was very unrealistic to believe that United personnel would be there at such an early time in the morning. But there's no question that there's evidence in the record that United provided all the cleaning services before, during, and after the kitchen and bathroom. That was their job. Certainly. That's exactly his testimony. The after, Your Honors, as stated and clarified later by Massa, was after the dismantling process had been completed. And at this time, at the time of the accident, the dismantling process certainly had not been completed. What's your best case? Best case is Richardson. Would you like a brief description? No. We've read it. Yeah.  I need to, I should have asked how much time allocated. Your Honors, I was just ready to sit down. We just asked that you affirm summary judgment for United. Thank you. All right. Thank you very much. Good morning, my accusing court. My name is Jeffrey Kill. I have the privilege of representing Freeman in this case. It's our position that summary judgment was properly granted for Freeman because of Freeman's limited role with regard to the show. And I know about the limitations. Was it properly granted on the grounds that Judge Davis ruled upon? It's a question I've been chomping at the bit to answer. The issue moved away from what Meredith actually brought up, which was the Kimbrough issue. To the 414, the restatement, what are the responsibilities of a contractor, because of his response to the motion for summary judgment as it pertained to Freeman Decker. And because it was brought up in the plaintiff's response, we addressed it in reply. And as this court is aware, you can affirm summary judgment on any basis contained within the record. His argument regarding contractor liability and our reply were matters that were before Judge Davis when he ruled. So it's not a matter of an issue being waived or not considered by Judge Davis. It was all clearly before him with written arguments by both parties on that issue. Now, with regard to Freeman's role in this thing, we did operate the service desk. We did do some erection and dismantling for some exhibitors. That is different, as Mr. Massa testified, from doing packing and shipping. We had no responsibility for cleaning of the aisles. We had no responsibility for cleaning of the booths. Our function was to be there during the move-out period between 730 in the morning and 5 p.m. We were not there at 5 or 4 o'clock in the morning. Then let me ask you this. Are you saying that your duties were not triggered until at the earliest? Would it have been 730 a.m. that 24th? I would hate to use the word duties, Your Honor. We didn't start work until 730 in the morning. Were you working, as Justice McBride pointed out, United had the contract that said before, during, and after. Were your contract only regarded after? No. We're there before the show. We do a pre-show inspection. We're there during the show because we're running the service desk. We're there after the show. But during the move-out phase, Mr. Massa said, we're there from 730 in the morning until 5 p.m. That last day. Well, move-out is actually a four- or five-day period for a show this big. During that time period, Judge and Justice, and I just want to make this perfectly clear, we did have safety meetings and we did have walk-throughs by Mr. Massa. But as Mr. Massa pointed out, that's with regard to the trades that worked for Freeman. That wouldn't include United. That wouldn't include security employees. That wouldn't include any of the 104 employee or exhibitor-appointed contracts. So are you some sort of limited general contractor? I mean, they characterized you as a general contractor that had authority and control over United. We had no authority and control over United except if someone came to the service desk saying, you know, our booth is kind of filthy. Could we have it cleaned? We would write up the work order for United to go clean up the booth. If it was a matter that occurred in the aisle, as Mr. Massa pointed out, that would be between show management, who's no longer a party here, and United to deal with. That was not a function of Freeman in this case. And because we had no duty with regard to cleaning, because we had no oversight with regard to the cleaning contractor, because our safety responsibilities did not extend to superintending any of the cleaning operations or any of the safety operations of any other contractor other than ourselves, we cannot be held liable under Section 414 as interpreted by this Court. Now, I know the one question that's going to come up, what's my best case? It's Calderon. It's Cochran. It is, my apologies to Justice McBride, you wrote the opinion in Peska, which I keep putting in an extra T. That's also a good one from our standpoint. And based upon the case law, based upon the limited role that we had in this case, summary judgment should be affirmed in favor of Freeman Deckard. I just have a couple of things. Sure. First, with respect to Counsel for United Maintenance, raise the argument that the incident form completed by Mr. Weyer constituted hearsay. However, that form clearly falls under the business records exception. In his deposition, he stated that that form is, you know, generally completed in the ordinary course of business, and he completed it. Was there a hearsay objection put forth at the deposition? Was it an evidence deposition versus a discovery? No, it was a discovery deposition. There was no hearsay objection. So that is admissible evidence and should be considered in considering the motion for summary judgment. Secondly, Your Honor, Counsel for United Maintenance made reference to the fact that the contract between United Maintenance and Freeman was not before this Court. We did, Judge Davis had an in-camera inspection of the contract. United Maintenance, or I believe Freeman, objected to its production on the basis of trade secrets. And after the in-camera inspection, the only pages that Judge Davis gave us were the pages that we included in the record. But the contract clearly shows that there is a contract between Freeman and United Maintenance to provide cleaning services at the show. All right. Well, thank you very much. Thank you. The case will be taken under advisement.